376 P.2d 550

**GARKANE POWER ASSOCIATION, INC., a Utah Corporation, Plaintiff and Appellant,**

v.

**WESTERN DRILLING COMPANY, a Utah Corporation et al., Defendants and Respondents.**

**RICHFIELD COMMERCIAL AND SAVINGS BANK, a Utah Corporation, Third-Party Plaintiff and Appellant,**

v.

**Richard T. CARDALL, Thomas P. Vuyk, Weston L. Bayles and Merrill K. Davis, Third-Party Defendants and Respondents.**

**No. 9620/I.**

Supreme Court of Utah.

Dec. 4, 1962.

3. 32 Am.Jur., p. 809.

Skeen, Worsley, Snow & Christensen, Gustin, Richards & Mattsson, Salt Lake City, for appellants.

Hanson & Baldwin, Merlin R. Lybbert, John G. Marshall, Weston L. Bayles, Merrill K. Davis, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeals by different litigants from separate orders of the lower court. Affirmed in part, reversed in part and remanded for further proceedings. No costs awarded.

This action[1] stemmed from orders and judgments in another suit[2] brought by Western Drilling Co. against five Bassicks, as individuals, including M. M. Bassick and Joseph Bassick, *and* the same ones doing business as Utilities Construction Co. and Utilities Service Co. Only M. M. Bassick was served. He was served *personally*. The return nowhere suggested that he was served as agent, officer or other representative of the companies.[3] Nonetheless, a default judgment for $50,000 was taken against all of the Bassicks as individuals

---

1. No. 128554, District Court of Salt Lake County, Utah.
2. No. 109123, District Court of Salt Lake County, Utah.
3. Rule 4(e) (4), Utah Rules of Civil Procedure.

*and* against them all doing business as Utilities. A couple of years later a garnishment was served on Garkane, plaintiff here, calling for answers as to indebtedness it owed to Utilities. The answer was as follows:

"Construction contract *not received final approval.* The final amount due Utility Service Co. *has not been determined.* From records available now about $11,010.69."

Two weeks later notice of intention to take a garnishee judgment *on April 18, 1960,* was served on Garkane. No denial of Garkane's answer was made and no other issue was raised.[4] It would appear that the fragmentary notice of intention to take judgment was not a reply contemplated under Rule 64D(h), Rules of Procedure.[5] The record is silent as to what, if anything happened on that date. Nevertheless, garnishee judgment was entered on April 7, 1960, and was attested to by the Court clerk and filed on June 7, 1960. Shortly thereafter, a trial judge, on motion of one Cardall, Western Drilling attorney, ordered the Sheriff to take $11,010.69 *from Garkane.* Four months later the same judge entered a similar order, augmented by a citation to the effect that the Sheriff show cause why he should not be held in contempt if he failed to take

the money from Garkane. On the same day Cardall and the Sheriff served the order, *not on Garkane,* the named garnishee, but on the Richfield Bank, defendant here, but not mentioned in the garnishment papers.

The bank paid to Cardall and Vuyk, attorneys for Western Drilling, the amount demanded. It debited Garkane's account therefor. On the same day, Joseph Bassick, d/b/a Utilities, moved to quash service of process. Three days later, on November 17, 1960, after having received the money from the bank, Western Drilling, through Cardall, moved that Bassick's motion be set over for hearing without date. Two days later, on November 19, 1960, Bassick notified Western Drilling that its motion would be heard on November 22, 1960. Garkane and the American Casualty assert in their pleadings that the motion to quash was granted. Richfield Bank did not admit this, but all the parties seem to concede that a minute entry was entered on November 22, 1960, vacating the $50,000 judgment. A $20,000 judgment, however, was entered against *M. M. Bassick* alone. Nowhere in the record is reflected anything about vacating the $50,000 judgment or the granting of the motion to quash, and we cannot determine from the record anything with respect to the content or significance of any such minute entry.

---

4. Remington-Rand, Inc. v. O'Neil, 4 Utah 2d 270, 293 P.2d 416 (1956) may have been controlling, but no one raised the point.

5. Ibid.

Upon this rather fragmentary record the present litigation was born. The record in the latter is as devoid of supporting evidence as the former, everything having been decided on motions directed to the pleadings, with no use of discovery procedures being evident.

Garkane sued Western Drilling, Joseph & Emily Bassick, d/b/a Utilities, the American Casualty Co., and the Richfield Commercial Bank.

Cardall, Vuyk, Bayles and Davis were joined as third party defendants.

Garkane recited that Western Drilling had obtained judgment against the Bassicks and Utilities; that thereafter Utilities contracted to do construction work for Garkane; that on the same day American Casualty bonded Utilities; that on March 17, 1960, Western Drilling garnished Garkane; that the latter answered as quoted above; that garnishee judgment thereafter issued, *after which* Utilities assigned its claim against Garkane to American Casualty, who notified Garkane of such assignment by registered mail; that Utilities thereafter filed its motion to quash; that on the same day Richfield Bank delivered $11,010.69 of funds deposited in Garkane's name to Western Drilling.

The complaint then alleged that the bank:

"charged the same to the account of plaintiff *contrary to the terms of the deposit agreement* between plaintiff and defendant * * * bank. Said payment by the * * * bank *was voluntary and without legal authority* whatever. Defendant * * * bank refuses to recredit said amount to the account of plaintiff."

It was alleged further that Utilities claimed the amount paid to Western Drilling was not owed by Utilities to Western Drilling and that such amount was no setoff against amounts due Utilities under its contract with Garkane, because of the invalidity of the judgment against Utilities; that American Casualty, by virtue of the assignment had a prior lien on any amounts owed by Garkane to Utilities. Garkane also alleged that the bank should reinstate Garkane's deposit. If not, Garkane claimed it was entitled to a judgment against Western Drilling. If that were to fail, Garkane claimed acquittal of any claim arising by virtue of any assignment by Utilities to American Casualty.

Richfield Bank answered, admitting payment to Cardall and Vuyk, debiting of Garkane's account and refusal to reinstate it. It then recited events hereinabove already recited, and alleged further that:

"on the 14th day of Nov. 1960, plaintiff, *through its officers and agents, and with full knowledge of the facts and circumstances*, which are the subject matter of this action, and with the aid

and assistance of * * * Cardall and * * * Huntsman, Sheriff * * * *instructed, authorized and directed the defendant * * * bank to pay over to Western Drilling * * * Huntsman and * * * Cardall* the sum of $11,010.69, and *pursuant thereto and by reason thereof,*" the defendant paid the same and that Garkane *"is now estopped to claim the same."*

In addition, Richfield Bank filed a cross-complaint against Cardall, Vuyk, Bayles and Davis, alleging that, as attorneys for Western Drilling, they caused the default judgment to be taken against Utilities, et al.; that they caused it to be entered with knowledge that the Court clerk had no authority to do so, and likewise caused garnishment, garnishee judgment and execution to issue; that on November 14, 1960, Utilities served a motion to quash service of process on *Cardall and Vuyk*; that *Cardall and Vuyk,* with knowledge of the facts, moved for continuance of the motion to quash; that *Cardall and Vuyk* caused issuance of the order to show cause against the Sheriff, and that with full knowledge of the facts, *Cardall and Vuyk* wrongfully and with intent to injure the bank, unlawfully and fraudulently caused the bank to make the payment to them; that *Cardall and Vuyk* appropriated the money to their own use and to the use of Bayles and Davis, and that all of them conspired against the bank and induced it to pay Cardall and others.

No specific acts of fraud causing the questioned payment were alleged as to Bayles and Davis, but it was alleged that Cardall and Vuyk fraudulently caused the bank to pay the payment.[6] Specificity was directed only as against Cardall and Vuyk. The bank prayed for an accounting, judgment for the amount it paid to Cardall and Vuyk, and for punitive damages.

American Casualty also answered, asserting invalidity of the judgment against Utilities, et al., urging that nothing was due to the latter, claiming that because of the void judgment and the assignment to it from Utilities, Garkane should be accountable to American, that the bank should reinstate Garkane's deposit, and that Garkane was not acquitted by the bank payment, further stating in substance that there was nothing due from Garkane until the Rural Electrification Administration approved the construction contract between Utilities and Garkane.[7]

Motions to dismiss were granted as to Cardall, Vuyk, Bayles and Davis, and as to Richfield Bank. Garkane's motion for summary judgment against American Casualty, was denied. All motions were acted

---

6. Rule 9(b) requires that the circumstances constituting fraud shall be stated with particularity.

7. Garkane's answer to garnishment: "Construction contract not received final approval."

upon without benefit of evidence presented or by employment of discovery procedures, so far as is reflected in this record.

Garkane and Richfield Bank pleadings are diametrically opposed, enough to require findings of fact based on evidence. We think the principles and Rules set forth in Blackham v. Snelgrove [8] are governing, and attention is directed thereto.

The same conclusion seems inescapable as to Cardall and Vuyk's motions to dismiss.

As to Bayles and Davis, Richfield Bank's pleading with respect to specific acts causing the latter's payment over of the money, is lacking, and we think that the pleading in this particular case urged only general conclusions, amounting to assertions of guilt by association. As such, we are constrained to hold that the pleadings did not invoke either the spirit or the letter of the rules relating to liberality of pleading, and do not extend even to the liberality in pleading evinced by Snelgrove, supra.

The granting of Richfield Bank's motion to dismiss, without proof, seemed to have been predicated on the premise that at the time of the bank's payment to Western Drilling, the judgment in the case was subsisting and not void as a matter of law. Denial of Garkane's motion for summary judgment, without proof, seems to be a conclusion that the judgment, as a matter of law, was void. This is inconsistent with the granting of Richfield Bank's motion to dismiss.

There is nothing in the record that indicates why the judgment was vacated, except a motion to quash, and there is nothing in the record to show that such motion ever was granted. There is nothing in the record to show that the original judgment in favor of Western Drilling and against the Bassicks and Utilities was vacated, or for what reason. There is nothing in the record to indicate whether such judgment was vacated in toto and a new judgment entered against M. M. Bassick for $20,000, or whether the original $50,000 judgment simply was reduced to $20,000 against M. M. Bassick alone. Nor is there anything in the record to determine why $20,000, rather than $50,000, or any other amount, was the indebtedness of M. M. Bassick alone. There is nothing in the record to show the status of Garkane's account in the Richfield Bank, and there is nothing in the record to show how or why the garnishee execution could or should be legitimately directed against Richfield Bank or why the bank should have been vulnerable to it.

This court cannot second-guess these things. They require proof, documentary or otherwise. The case is remanded with opportunity to resolve these matters with recorded proof, and in consonance with the views herein expressed.

8.  3 Utah 2d 157, 280 P.2d 453 (1955).

**34**

In the meantime we reverse the order granting Richfield's motion to dismiss, affirm the denial of Garkane's motion for summary judgment, reverse the order granting Cardall and Vuyk's motions to dismiss, and affirm the motions of Bayles and Davis to dismiss. Other points urged cannot be resolved until the factual matters suggested above can be determined and incorporated in the record. (Italics ours.)

WADE, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.